IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:10-CR-15-WKW [WO] |
| | ) | |
| ANTHONY PERRIE TURNER | ) | |
| | ) | |

## ORDER ADOPTING REPORT AND RECOMMENDATION

Defendant Anthony Perrie Turner ("Turner") is charged, along with two co-defendants, on all three counts of a three-count indictment: (1) conspiracy to take a motor vehicle by force and intimidation, with intent to cause death and serious bodily harm, in violation of 18 U.S.C. §§ 2119 and 371; (2) aiding and abetting each other to take a motor vehicle by force and intimidation, with intent to cause death and serious bodily harm, in violation of 18 U.S.C. §§ 2119 and 2; and (3) aiding and abetting each other to knowingly use and carry firearms during and in relation to, and possession of said firearms in furtherance of, a crime of violence for which they may be prosecuted in a Court of the United States, to wit: "carjacking," as charged in Count 2, all in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. (Doc. # 1.) One day after the alleged incident, one of the victims, A.P., identified Mr. Turner in an out-of-court photo array procedure. Mr. Turner filed a motion to suppress the identification, arguing that it was overly suggestive, prejudicial, and unreliable. (Doc. # 57.) After an evidentiary hearing and consideration of the parties' contentions, the Magistrate Judge filed a Report and Recommendation ("Recommendation"), recommending the denial of Mr. Turner's motion to suppress. (Doc. # 86.) Mr. Turner filed

Objections to the Recommendation. (Def.'s Br. (Doc. # 99).) Pursuant to 28 U.S.C. § 636(b)(1), the court conducts a *de novo* review of the portions of the Recommendation to which the objections were made. For the following reasons, Mr. Turner's objections are due to be overruled and his motion to suppress is due to be denied.

Tracking the two-part inquiry that due process imposes upon pre-trial identifications, Mr. Turner objects both to the recommendation that the photo array, and the circumstances surrounding it, were not unduly suggestive, and to the recommendation that A.P.'s identification of Mr. Turner's picture is reliable, given the totality of the circumstances. *Cikora v. Dugger*, 840 F.2d 893, 895 (11th Cir. 1988). Each of Mr. Turner's objections will be addressed in turn.

### *1.   Suggestiveness of the Photo Array and the Attendant Circumstances*

Mr. Turner contends that the police used suggestive identification procedures giving rise to a likelihood of irreparable misidentification in violation of the Due Process clause of the Fifth Amendment. (Def's Br. 1.) The admission of a witness's photo-identification of a suspect violates a defendant's constitutional right to due process if "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968); *see also Manson v. Brathwaite*, 432 U.S. 98, 107 (1977); *Stovall v. Denno*, 388 U.S. 293, 302 (1967); *O'Brien v. Wainwright*, 738 F.2d 1139, 1140 (11th Cir. 1984). "[D]ue to the inherent vagaries of eyewitness identifications and their unusually persuasive effect upon jurors, the jury should not hear eyewitness testimony unless the testimony first meets a

minimum standard of reliability." *United States v. Ballard*, 534 F. Supp. 749, 751 (M.D. Ala. 1982) (citations omitted).

Mr. Turner objects to the photo array itself, arguing that his photo stands out because he has a "significantly darker complexion" than the other individuals pictured. (Def.'s Br. 2.)  In conjunction with A.P.'s statement to the interviewing officer, describing the assailant as "dark or medium," Mr. Turner argues that it was a "foregone conclusion" that A.P. would select his picture from the array. (Oct. 26, 2009 Statement of A.P. at 9 (Suppr. Hr'g, Gov't Ex. 2).)

Mr. Turner's premises and his conclusion are fallacious.  First, the variances in skin tone between the individuals are slight, and, as the magistrate judge noted, can easily be attributable in part to discrepant photographic quality. (Recommendation 6.)  Second, whatever slight variances there are between the participants in skin tone, they all fit well within A.P.'s description of the suspect as "dark or medium." *See Gov't of Canal Zone v. Waldron*, 574 F.2d 283 (5th Cir. 1978)[1]; *see also Raheem v. Kelly*, 257 F.3d 122, 134 (2d Cir. 2001) (a lineup is unduly suggestive if the suspect meets the description previously given by the witness or victim and the other participants do not).  The Eleventh Circuit requires only that the other lineup participants have "roughly the same characteristics and features as the accused." *Williams v. Weldon*, 826 F.2d 1018, 1021 (11th Cir. 1987) (fact that petitioner was only black man in lineup did not render lineup impermissibly suggestive); *see also United*

---

[1] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit prior to October 1, 1981. *See* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

*States v. Whitney*, 787 F.2d 457, 459 (8th Cir. 1986) (photo display not overly suggestive even though defendant was the only light-complexioned black man in display); *Howard v. Bouchard*, 405 F.3d 459, 471 (6th Cir. 2005) (discrepancy in height in lineup identification was not impermissibly suggestive, even though defendant was three inches taller that other participants); *United States v. Curry*, 187 F.3d 762, 769 (7th Cir. 1999) (quotation omitted) (lineup participants need only have descriptive features within a reasonable range of similarity to each other in order for lineup not to be unreasonably suggestive). Despite Mr. Turner's contentions, the fact is that all of the participants had roughly the same characteristics as he did. (Photo Array (Suppr. Hr'g, Gov't Ex. 1).) All of the participants had a "dark or medium" skin tone. The testimony of Officer Hughes reveals that the participants who fell on the "medium" part of the skin-tone spectrum had characteristics similar to Mr. Turner in other ways.[2] (Suppr. Hr'g Tr. 38 (Doc. # 84).)

Furthermore, Mr. Turner's conclusion that A.P. would automatically positively identify the darkest participant in the lineup, or even positively identify anyone in the lineup, is misguided. Testimony given before the Magistrate Judge revealed that, immediately prior to being shown the lineup, A.P. was given and she signed a form which read in part: "YOU SHOULD NOT CONCLUDE OR GUESS THAT THE PHOTOGRAPHS CONTAIN THE PICTURE OF THE PERSON WHO COMMITTED THE CRIME. YOU ARE NOT OBLIGATED TO IDENTIFY ANYONE." (Suppr. Hr'g, Gov't Ex. 1 (emphasis in

---

[2] Aside from roughly the same skin tone, Mr. Turner and Participant One both carried a similar coif, the popular nomenclature of the particular style being a "faux-hawk." Mr. Hughes described them as both having a "pointed head." (Suppr. Hr'g Tr. 38.)

original).)  The testimony reveals that A.P. fully understood that the suspect was not necessarily among the photos presented to her.  (Suppr. Hr'g Tr. 74-75.)

### 2. *Reliability of A.P.'s Identification*

Having found that the photo array is not unduly suggestive, the court need not consider the reliability of the photo array.  *Williams*, 826 F.2d at 1021.

In any case, the testimony reveals that A.P. did not identify Mr. Turner based primarily on his skin tone.  Rather, the testimony reveals that she actually covered up Mr. Turner's skin with a piece of paper in order to reflect how she saw the suspect the night before, when he was wearing a bandana over his face.  (Suppr. Hr'g Tr. 74.)  A.P. instead identified Mr. Turner based upon his eyes, the feature of the suspect she saw best.  (Suppr. Hr'g Tr. 90); *Meeks v. Moore*, 216 F.3d 951, 954 n.7, 968 (11th Cir. 2000) (upholding identification procedure as reliable where witness recognized suspect primarily based upon his eyes).  Therefore, even if there were some defect in the lineup based upon the skin tone of the participants, A.P.'s identification of Mr. Turner, one day after the incident, would nevertheless be reliable because of the fact that A.P. did not particularly look to skin tone in making her identification and because the identification took place so soon after the encounter. *See Manson*, 432 U.S. at 114-16.

### 3. *Order*

Accordingly, it is ORDERED that Mr. Turner's objections (Doc. # 99) are OVERRULED.  It is further ORDERED that the Recommendation (Doc. # 86) is ADOPTED, and that the motion to suppress (Doc. # 57) is DENIED.

DONE this 28th day of September, 2010.

                                         /s/ W. Keith Watkins
                                   UNITED STATES DISTRICT JUDGE